UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| CIRO CAMACHO,<br><br>                    Petitioner,<br>     v.<br><br>NETHANJAH BREITENBACH,[1] *et al.*,<br><br>                  Respondents. | Case No. 3:23-cv-00001-MMD-CSD<br><br>MERITS ORDER |

**I.    SUMMARY**

Petitioner Ciro Camacho was sentenced in Nevada state court to 55 years to life after pleading guilty to sexual assault of a child and using a minor in the production of pornography. (ECF No. 17-22.) This matter is before this Court for adjudication of the merits of Camacho's First-Amended Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254, in which Camacho alleges various ineffective-assistance-of-counsel claims. (ECF No. 12 ("First-Amended Petition").) For the reasons discussed below, the Court denies the First-Amended Petition and a Certificate of Appealability.

**II.    BACKGROUND**

    **A.    Factual background**[2]

Camacho was in "a friends-with-benefits situation" with his co-defendant Umi Hongo in April of 2017. (ECF No. 17-3 at 9, 13.) Hongo and her then three-year old

---

[1]According to the Nevada Department of Corrections, Camacho is incarcerated at Lovelock Correctional Center. Nethanjah Breitenbach is the current warden for that facility. At the end of this Order, the Court kindly directs the Clerk to substitute Nethanjah Breitenbach as a respondent for Respondent Tim Garrett. *See* Fed. R. Civ. P. 25(d).

[2]The Court makes no credibility or other factual findings regarding the truth or falsity of this evidence from the grand jury proceeding in state court. The Court's summary is merely a backdrop to its consideration of the issue presented in the First-Amended Petition.

daughter, Bonnie Alan,³ traveled from Los Angeles, California to Douglas County, Nevada, on April 12, 2017, to stay with Camacho for 7 days. (*Id.* at 15-16.)

In July of 2017, investigators with the Douglas County Sheriff's Office seized Camacho's iPhone pursuant to an unrelated search warrant. (*Id.* at 18.) Investigators found "some videos and images showing sexual assaults being performed on [Bonnie Alan] as well as some child pornography" on Camacho's iPhone, time stamped to Hongo's and Bonnie Alan's stay with Camacho in April of 2017. (*Id.* at 35.) Based on geotagging, those videos and photographs were taken at Camacho's residence. (*Id.* at 39.) The videos showed, *inter alia*, Camacho "inserting his penis into" Bonnie Alan's "genital area." (*Id.* at 45.) Although Camacho's face was not visible in the videos or photographs, he was identified by his distinct tattoos—"one on each arm and one on each hip." (*Id.* at 41.) Hongo was seen in some of the videos "masturbating while Ciro Camacho [was] sexually assaulting her daughter." (*Id.* at 44.)

### B. Procedural background

On August 30, 2017, Camacho was indicted on 5 counts of sexual assault of a child under the age of 14 years, 2 counts of using a minor in the production of pornography, and 4 counts of sexual assault of a child under the age of 14 years. (ECF No. 17-2.) Camacho agreed to plead guilty to 1 count of sexual assault of a child under the age of 14 years and 2 counts of using a minor in the production of pornography in return for the state dismissing the remaining charges. (ECF No. 17-22.) Camacho was sentenced to an aggregate term of 55 years to life. (*Id.*) Camacho appealed, and the Nevada Court of Appeals affirmed. (ECF No. 17-39.)

Camacho petitioned the state court for postconviction relief. (ECF No. 17-46.) The state court denied Camacho's petition. (ECF No. 18-12.) Camacho appealed, and the Nevada Supreme Court affirmed. (ECF No. 18-27.)

///

---

³Bonnie Alan is an alias that was used throughout the case. (ECF No. 17-3 at 12.)

Camacho commenced this federal habeas action on January 3, 2023. (ECF No. 1.) The Court granted Camacho's motion for the appointment of counsel and appointed the Federal Public Defender to represent Camacho. (ECF Nos. 3, 9.) Camacho raises the following grounds for relief in his First-Amended Petition:

> 1(a). His counsel failed to move to suppress illegally obtained evidence.
> 1(b). His counsel failed to move to dismiss the indictment based on (1) the State's evidence being illegally obtained, (2) false testimony at the grand jury, (3) improper notice of the grand jury proceedings, and (4) the grand jury not being sworn in.
> 1(c). His counsel failed to object to the admission of exhibits at sentencing.
> 2. The cumulative prejudicial effect of grounds 1(a) and 1(b).

(ECF No. 12.)

Respondents moved to dismiss the First-Amended Petition. (ECF No. 16.) The Court denied the motion to dismiss. (ECF No. 27.) Respondents filed their answer to the First-Amended Petition, and Camacho replied. (ECF Nos. 28, 35.)

## III. GOVERNING STANDARD OF REVIEW

28 U.S.C. § 2254(d)[4] sets forth the standard of review generally applicable in habeas corpus cases under the Antiterrorism and Effective Death Penalty Act ("AEDPA"):

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

---

[4] Camacho argues that 28 U.S.C. § 2254 is unconstitutional because it violates the Suspension Clause, fundamental principles of separation of powers, the ban on cruel and unusual punishment, and the guarantee of due process. (ECF No. 12 at 12.) This argument lacks merit, as the Court of Appeals for the Ninth Circuit has stated that "[t]he constitutional foundation of § 2254(d)(1) is solidified by the Supreme Court's repeated application of the statute." *Crater v. Galaza*, 491 F.3d 1119, 1129 (9th Cir. 2007).

A state court decision is contrary to clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254, "if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court." *Lockyer v. Andrade*, 538 U.S. 63, 73 (2003) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)). A state court decision is an unreasonable application of clearly established Supreme Court precedent within the meaning of 28 U.S.C. § 2254(d) "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 75 (quoting *Williams*, 529 U.S. at 413). "The 'unreasonable application' clause requires the state court decision to be more than incorrect or erroneous. The state court's application of clearly established law must be objectively unreasonable." *Id.* (quoting *Williams*, 529 U.S. at 409-10) (internal citation omitted).

The Supreme Court has instructed that "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court has stated "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at 102 (citing *Lockyer*, 538 U.S. at 75); *see also Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (describing the standard as a "difficult to meet" and "highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt" (internal quotation marks and citations omitted)).

**IV.     DISCUSSION**

    **A.     Ground 1: Counsel Ineffectiveness**

In ground 1, Camacho alleges that he was denied the effective assistance of counsel as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution. (ECF No. 12 at 13.)

### 1. Standard for ineffective assistance of counsel claims

In *Strickland v. Washington*, the Supreme Court propounded a two-prong test for analysis of claims of ineffective assistance of counsel requiring the petitioner to demonstrate (1) that the attorney's "representation fell below an objective standard of reasonableness," and (2) that the attorney's deficient performance prejudiced the defendant such that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." 466 U.S. 668, 688, 694 (1984). A court considering a claim of ineffective assistance of counsel must apply a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id*. at 689. The petitioner's burden is to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id*. at 687. Additionally, to establish prejudice under *Strickland*, it is not enough for the habeas petitioner "to show that the errors had some conceivable effect on the outcome of the proceeding." *Id*. at 693. Rather, the errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id*. at 687.

When the ineffective assistance of counsel claim is based "[i]n the context of a guilty plea, the ineffectiveness inquiry probes whether the alleged ineffective assistance impinged on the defendant's ability to enter an intelligent, knowing and voluntary plea of guilty." *Lambert v. Blodgett*, 393 F.3d 943, 979 (9th Cir. 2004). As such, "[t]o succeed, the defendant must show that counsel's assistance was not within the range of competence demanded of counsel in criminal cases." *Id*. at 979-80. And regarding the prejudice prong, the petitioner "must show that there is a reasonable probability that, but for counsel's errors, he would not have pled guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985); *see also Lafler v. Cooper*, 566 U.S. 156, 163 (2012) ("In the context of pleas a defendant must show the outcome of the plea process would have been different with competent advice.").

///

Where a state district court previously adjudicated the claim of ineffective assistance of counsel under *Strickland*, establishing that the decision was unreasonable is especially difficult. *See Richter*, 562 U.S. at 104-05. In *Richter*, the United States Supreme Court clarified that *Strickland* and § 2254(d) are each highly deferential, and when the two apply in tandem, review is doubly so. *See id.* at 105; *see also Cheney v. Washington*, 614 F.3d 987, 995 (9th Cir. 2010) (internal quotation marks omitted) ("When a federal court reviews a state court's *Strickland* determination under AEDPA, both AEDPA and *Strickland*'s deferential standards apply; hence, the Supreme Court's description of the standard as doubly deferential."). The Supreme Court further clarified that, "[w]hen § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Richter*, 562 U.S. at 105.

### 2. Ground 1a—counsel's failure to move to suppress evidence

In ground 1a, Camacho alleges that his counsel failed to move to suppress evidence obtained from his cell phone based on law enforcement's use of his passcode to access areas of his cell phone that they were not given consent to access. (ECF No. 12 at 14.)

#### a. Background information

Camacho testified at the postconviction evidentiary hearing that investigators had "a warrant to seize [his] cell phone," which was collected from his belongings while he was incarcerated on different charges. (ECF No. 18-11 at 11.) Investigators brought Camacho to an interrogation room and gave him his *Miranda* warning, and Camacho "said [he] would like an attorney because [he] need[ed] one, right[?]" (*Id.*) The investigator answered, "not really," started recording the interrogation, and then gave Camacho another *Miranda* warning. (*Id.*) After questioning Camacho, the investigator turned off the tape recorder and continued to question Camacho about his cell phone. (*Id.*) The investigator started yelling at Camacho and "then he told [Camacho] that if . . . [Camacho] didn't give him the password to [Camacho's] phone that he would just subpoena

6

Instagram and get it anyways and that it would be worse for [Camacho]." (*Id.* at 12.) Camacho gave the investigator his cell phone's passcode for the limited purpose of allowing access to his Instagram account; however, the investigator continued to search his cell phone after not finding anything on his Instagram account and then, after finding incriminating information, stopped the search and applied for a warrant to search the rest of his cell phone. (*Id.* at 14.) Camacho told his counsel that she needed to "look into" the interrogation and unauthorized search of the rest of his cell phone, but his counsel told him that that the investigators "were allowed to do that." (*Id.* at 11-12, 15.) Notably, the court found "Camacho's testimony to be incredible and . . . not worthy of being given any credence." (*Id.* at 79.)

Camacho's counsel testified at the postconviction evidentiary hearing that she researched the extended, unauthorized search into other areas of Camacho's cell phone as well as the investigators using this unauthorized search as a basis to apply for a search warrant. (ECF No. 18-11 at 42-43.) However, Camacho's counsel did not think a motion to suppress would have been meritorious for several reasons. (*Id.* at 43, 55.) First, the criminal activity on Camacho's cell phone was prone to "inevitable discovery" because providing a passcode to his cell phone to look at his Instagram account was analogous to providing "a key to a house to go in and look in the bedroom" because law enforcement is not precluded from seizing something outside the bedroom if "on the way to the bedroom [law enforcement] saw something that led [them] to believe there was other criminal activity in the house." (*Id.* at 44.) Second, the good faith exception would have applied because the investigator "got a warrant to examine those materials they had seen inadvertently." (*Id.* at 47.) And third, there was no coercion during Camacho's interrogation to get his passcode. (*Id.* at 49.) Further, Camacho's counsel testified that moving to suppress the evidence could have hurt the plea-bargaining process. (*Id.* at 55.) And here, a plea bargain was important because (1) there were no viable defenses to present at trial and (2) the plea bargain resulted in charges being dismissed, the State agreeing not to pursue allegations of "two local little girls who alleged sexual touching or

7

more by Mr. Camacho," and the FBI agreeing not to submit the matter to the United States Attorney. (*Id.* at 56-57, 64.)

The first search warrant, 17-SW-0022, permitted law enforcement to search Camacho's "cellular phone, including any SIM cards and/or memory cards contained within the device . . . so that a full and thorough examination may be conducted on the device." (ECF No. 18-2 at 65.) After Camacho's cell phone was seized, law enforcement was unable to get any "usable data" from the cell phone. (*Id.* at 71.) Law enforcement was only able to access data from the cell phone after Camacho "consent[ed] to [a] search [of his] Instagram account" and provided his cell phone passcode for that purpose. (*Id.* at 74–75, 84.) After unlocking Camacho's cell phone with the passcode and viewing his Instagram account, investigators "inspected [his] image folder." (*Id.* at 85.) Based on the images seen, law enforcement obtained a second search warrant, 17-SW-0025, which allowed for the search of "[i]mages depicting persons under 16 years of age engaged in sexual conduct" on Camacho's cell phone. (*Id.* at 84.)

### b. State court determination

In affirming the state court's denial of Camacho's state postconviction petition, the Nevada Supreme Court held:

> Appellant argues that trial counsel should have moved to suppress evidence and that the failure to do so affected his decision to enter a guilty plea. Appellant argues that searches of his cellphone pursuant to several search warrants were invalid because the police only had the passcode to unlock his phone for the limited purpose of checking his Instagram account. And he claims he did not consent to a search of the images on the phone, images which led the police to seek additional search warrants. We conclude appellant has not demonstrated deficient performance or prejudice. Trial counsel testified that she researched issues surrounding the search and discussed her research with appellant, but she did not think there was a valid basis to suppress the evidence and worried that trying to do so could hurt his bargaining power. The district court found this testimony credible.
>     [FN1] The district court further found appellant's testimony not to be credible, including testimony that he was intimidated into giving the passcode during an allegedly unrecorded portion of the interrogation.
> Appellant has not identified any controlling authority that would have provided the basis for a successful motion to suppress the evidence that a

reasonably objective attorney should have found. *See Strickland*, 466 U.S. at 690 (requiring a convicted defendant to "identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment" and recognizing that the court then determines "whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance"); *Kirksey v. State*, 112 Nev. 980, 990, 923 P.2d 1102, 1109 (1996) (explaining that to show prejudice due to counsel's failure to file a motion to suppress evidence, the suppression claim must be meritorious and there must be a reasonable probability that the exclusion of the evidence would have changed the result of a trial); *see also Maresca v. State*, 103 Nev. 669, 673, 748 P.2d 3, 6 (1987) (recognizing "[i]t is appellant's responsibility to present relevant authority and cogent argument"). Further, while there is an undeniable expectation of privacy in the contents of a cellphone, there is no clear merit to appellant's argument that the police could not use the passcode he voluntarily provided to them for data extraction pursuant to the multiple search warrants that followed. *See, e.g., People v. Davis*, 438 P.3d 266, 270–72 (Colo. 2019) (concluding there was no Fourth Amendment violation when the police used a passcode for a cellphone voluntarily provided by the defendant for the limited purpose of calling his girlfriend to execute a later search warrant for the contents of that phone). Thus, appellant has not demonstrated that a motion to suppress would have been meritorious in this case such that counsel was objectively unreasonable in not filing a motion.

> [FN2] Further problematic to this appeal, appellant did not provide this court a copy of his interview with the police where he provided his passcode, verbal consent to search his Instagram account, and written consent to search the "camera." This missing portion of the record is essential for a review of the factual underpinnings of his ineffective-assistance claim, namely that the police exceeded the consent given during the July interview or that he was intimidated into giving consent. NRAP 30(b)(3) requires an appellant to include in his appendix any portion of the record that is necessary for this court's determination of the issues raised on appeal, and NRAP 30(d) permits a party to request an order directing the district court clerk to transmit an exhibit that is incapable to being reproduced in the appendix. Without a complete record, appellant has not carried his burden of showing error on appeal. *See Riggins v. State*, 107 Nev. 178, 182, 808 P.2d 535, 538 (1991) ("[T]he missing portions of the record are presumed to support the district court's decision, notwithstanding an appellant's bare allegations to the contrary."), *rev'd on other grounds*, 504 U.S. 127 (1992); *see also Cuzze v. Univ. and Cmty. Coll. Sys. of Nev.*, 123 Nev. 598, 603, 172 P.3d 131, 135 (2007) ("When an appellant fails to include necessary documentation in the record, we necessarily presume that the missing portion supports the district court's decision.").

*Strickland*, 466 U.S. at 687 (recognizing that deficient performance "requires showing that counsel made errors so serious that counsel was not

>functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment"). Under these facts, appellant also did not demonstrate a reasonable probability that he would not have entered a guilty plea and would have insisted on going to trial absent trial counsel's failure to file a motion to suppress the evidence. Additionally, although appellant received a significant sentence, appellant received a benefit by pleading guilty in that he avoided multiple additional child sexual assault charges in this case, another criminal case involving sexual abuse of children was not pursued, and there was an agreement not to refer child pornography charges for federal prosecution. Therefore, we conclude that the district court did not err in denying this claim.

(ECF No. 13-13 at 3-5.)

### c. Analysis

Camacho's consent to search was limited to his Instagram account. A reasonable person would not have understood the scope of this consent to include Camacho's images folder. *See Florida v. Jimeno*, 500 U.S. 248, 251 (1991) ("The standard for measuring the scope of a suspect's consent [to a search] under the Fourth Amendment is that of 'objective' reasonableness—what would the typical reasonable person have understood by the exchange between the officer and the suspect?"); *see also State v. Ruscetta*, 163 P.3d 451, 454-55 (Nev. 2007) (following *Jimeno* and concluding that "the proper analysis in cases involving consensual . . . searches is a traditional objective reasonableness approach, which requires an examination of the totality of the circumstances"). Thus, the investigator's search of Camacho's images folder was outside the scope of Camacho's consent to search. *See United States v. McWeeney*, 454 F.3d. 1030, 1034 (9th Cir. 2006) ("It is a violation of a suspect's Fourth Amendment rights for a consensual search to exceed the scope of the consent given."). That being determined, however, the Nevada Supreme Court reasonably concluded that Camacho failed to demonstrate that a motion to suppress would have been meritorious.

The first search warrant, which preceded Camacho's consent to search, allowed law enforcement to conduct "a full and thorough examination" of Camacho's cell phone based on "probable cause to believe that the crime of [s]exual [a]ssault . . . ha[d] been committed." (ECF No. 18-2 at 65.) Therefore, the search of Camacho's images folder was encompassed within the first search warrant, so the incriminating evidence found during

that images folder search was not subject to suppression. *See Murray v. United States*, 487 U.S. 533 (1988) (holding that the Fourth Amendment does not require the suppression of evidence discovered during an illegal search if that evidence is also discoverable during a search pursuant to a valid warrant that is wholly independent of the initial illegal search). It is true that investigators would not have been able to access the images folder absent Camacho providing his passcode, but Camacho's giving of his passcode and his consent to search are not indivisible. Camacho's giving of his passcode was merely the mechanism required for law enforcement to conduct the consensual search of his Instagram account on his cell phone. Law enforcement was not required to immediately relock Camacho's cell phone or promptly forget the passcode following their search of his Instagram account. Instead, once law enforcement unlocked Camacho's cell phone with the passcode and conducted the consensual search of Camacho's Instagram account, law enforcement was then permitted to conduct their original search of Camacho's entire cell phone under the valid first search warrant.

Alternatively, as the Nevada Supreme Court reasonably determined, law enforcement's search of the images folder was independently valid under the second warrant. Camacho contends that the second warrant was tainted by the unlawful enlargement of the consensual search; however, as was previously discussed, there was already probable cause to search the images folder before the consensual search. In fact, the first and second search warrants only differed in detail. The nature of the warrants was the same: to search for evidence that Camacho had engaged in inappropriate sexual conduct with minors.

In sum, Camacho's counsel was not ineffective for failing to file a meritless motion to suppress. *See, e.g.*, *Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986) ("Where defense counsel's failure to litigate a Fourth Amendment claim competently is the principal allegation of ineffectiveness, the defendant must also prove that his Fourth Amendment claim is meritorious."). Thus, the Nevada Supreme Court's determination denying Camacho relief on this claim constitutes an objectively reasonable application

of *Strickland* and was not based on an unreasonable determination of the facts. Camacho is not entitled to federal habeas relief for ground 1a.

### 3. Ground 1b—counsel's failures regarding the indictment

In ground 1b, Camacho alleges that his trial counsel failed to move to dismiss the indictment because (1) the grand jury was prohibited from considering the State's evidence since it was obtained outside the scope of his consensual search, (2) the investigator's testimony at the grand jury was misleading because he did not mention that the passcode had only been provided for law enforcement to view his Instagram account, (3) the State never properly served him with notice of the grand jury proceedings, and (4) the grand jury was never properly sworn in. (ECF No. 12 at 20.)

#### a. State court determination

In affirming the state court's denial of Camacho's state postconviction petition, the Nevada Supreme Court held:

> Next, appellant argues that trial counsel should have challenged the validity of the indictment on the grounds that he did not receive notice of the grand jury proceedings, the grand jury was not sworn-in at the beginning of the recorded proceedings, and the indictment was based on illegally obtained evidence. Appellant has not demonstrated deficient performance or that he was prejudiced. The record indicated that notice of the grand jury proceedings was served on appellant. Although the transcript did not contain the oath, appellant has not demonstrated that the grand jurors did not take their oath pursuant to NRS 172.085. And finally, appellant has not demonstrated that illegally obtained evidence was presented to the grand jury. Accordingly, a challenge to the indictment on these grounds would have been futile. Trial counsel is not deficient for failing to file a futile motion, *see Ennis v. State*, 122 Nev. 694, 706, 137 P.3d 1095, 1103 (2006), and appellant has not demonstrated that there was a reasonable probability that he would not have pleaded guilty but for trial counsel's failure to assert futile challenges to the indictment. Therefore, the district court did not err in denying this claim.

(ECF No. 13-13 at 5-6.)

#### b. Analysis

The Court will first address the substance of the evidence presented to the grand jury. Regarding the grand jury considering evidence outside the scope of Camacho's consensual search of his cell phone, the Nevada Supreme Court reasonably determined that Camacho fails to demonstrate that his counsel was ineffective. For the reasons

12

discussed in ground 1a, *supra*, this evidence was not illegally obtained. Next, regarding the investigator's testimony before the grand jury, it is accurate, as Camacho maintains, that the investigator did not mention that Camacho only provided his passcode for purposes of viewing his Instagram account. (*See* ECF No. 17-3 at 18.) However, Camacho fails to demonstrate that the investigator's testimony was misleading such that his counsel was ineffective for not challenging the indictment on this basis. Indeed, the investigator testified that he was "able to access th[e] data" on "Camacho's iPhone 6S," including the video and photographs that were the main discussion at the grand jury proceeding, because "Camacho provided [him] with the pass code to the phone." (*Id.*) While a more detailed factual basis of the cell phone search would have been relevant for other proceedings—for example, at trial or at an evidentiary hearing on a motion to suppress—Camacho fails to demonstrate that the cursory details of the search itself deceived the grand jury when the grand jury was only tasked with determining whether probable cause existed to believe that an offense had been committed and the defendant had committed it. *See* NRS § 172.155(a).

Turning to the procedural issues surrounding the grand jury proceedings, Camacho first contends that he did not receive notice of the proceedings in accordance with Nevada law.[5] On August 22, 2017, the Office of the District Attorney for Douglas County hand delivered the "Notice of Grand Jury Investigation and Right to Testify" to Camacho while he was in custody at the Carson City Jail. (ECF No. 18-2 at 107.) The only evidence that Camacho did not receive this notice is Camacho's own self-serving statements. *See*, *e.g.*, *Womack v. Del Papa*, 497 F.3d 998, 1004 (9th Cir. 2007) (rejecting a petitioner's claim, in part, because "[o]ther than [the petitioner]'s own self-serving statement, there [was] no evidence" to support his allegations). Consequently, the

---

[5]Under Nevada law, "reasonable notice is required before a defendant is indicted by a grand jury." *Sheriff, Humboldt County v. Marcum*, 783 P.2d 1389, 1391 (Nev. 1989). Nevada law also requires that this reasonable notice be served "upon a person whose indictment is being considered by the grand jury," and that "[t]he notice is adequate if it . . . is given to the person, the person's attorney of record or an attorney who claims to represent the person." NRS § 172.241(2)(a).

13

Nevada Supreme Court reasonably concluded that notice of the grand jury proceedings was proper, so Camacho fails to demonstrate that his counsel was ineffective for not challenging the indictment on this basis. Finally, regarding Camacho's contention that the grand jury was never properly sworn in, it is true that (1) Nevada law requires that an oath be administered to the grand jury under NRS § 172.085 and (2) in the matter at hand, no oath was transcribed in the grand jury proceeding transcripts. (*See* ECF No. 17-3.) However, again, the Nevada Supreme Court reasonably found that Camacho failed to demonstrate that his counsel was ineffective. Even if Camacho could somehow demonstrate that the oath was not administered before the transcription of the grand jury proceedings began, Camacho fails to demonstrate prejudice because dismissal of the indictment on this minor procedural defect would have been without prejudice. *Cf. Ostman v. Eighth Jud. Dist. Ct.*, 816 P.2d 458, 460 (Nev. 1991) (finding error but only ordering the state district court to dismiss the indictment without prejudice).

In sum, the Nevada Supreme Court's determination that Camacho failed to demonstrate deficient performance or resulting prejudice constituted an objectively reasonable application of *Strickland* and was not based on an unreasonable determination of the facts. Camacho is not entitled to federal habeas relief for ground 1b.

### 4. Ground 1c—counsel's failure to object at sentencing

In ground 1c, Camacho alleges that his trial counsel failed to object to the admission of exhibits 1-7 at his sentencing hearing and the sentencing court's in-chambers review of these exhibits. (ECF No. 12 at 24.)

#### a. Procedural default

The Court previously found ground 1c to be procedurally defaulted and deferred ruling on the cause and prejudice analysis until the time of merits review. (ECF No. 27 at 7.) Under *Martinez v. Ryan*, a petitioner can demonstrate cause to potentially overcome the procedural default of a claim of ineffective assistance of trial counsel by demonstrating that either (a) he had no counsel during the state postconviction proceedings or (b) such counsel was ineffective. *See* 566 U.S. 1, 14 (2012). To demonstrate "prejudice" under

*Martinez*, the petitioner must show that the defaulted claim of ineffective assistance of trial counsel is a "substantial" claim. *Id.* A claim is "substantial" for purposes of *Martinez* if it has "some merit," which refers to a claim that would warrant issuance of a certificate of appealability. *Ramirez v. Ryan*, 937 F.3d 1230, 1241 (9th Cir. 2019). This standard does not require a showing that the claim will succeed, but instead only that the claim's proper disposition could be debated among reasonable jurists. *See generally Miller-El v. Cockrell*, 537 US. 322, 336-38 (2003).

### b. Background information

During the sentencing hearing, the court asked Camacho's counsel if she had any objection to the exhibits the State wished to present. (ECF No. 17-24 at 15.) Camacho's counsel stated that she did not and that Camacho "would like not to be present in the courtroom if [they were] going to be displayed." (*Id.* at 15-16.) The court then made the following comments:

> The reason that -- that there is a separate crime for the use of a minor in producing pornography as opposed to simply the sexual abuse of the minor in that pornography is because the production of that video or photography tends to re-victimize the minor, the child, every time someone views it, whether the child is present or not. It is -- if Mr. Camacho is aware of the evidence against him, it is not my intention to allow him to sit here and see it and re-victimize this child and carry with him to prison the memory of some memento that he created which he has pled guilty to creating. And it is my intention to, since there's not going to be an objection to these exhibits, to allow [the State] to have them marked, and I will review them in chambers. And I'm not going to allow the public to be in here to view this evidence. The evidence that you are going to offer me that has this child being victimized will be sealed in this file. And I'm not going to allow Mr. Camacho to re-victimize her by sitting here and looking at it. It's not going to be permitted. So unless there's some really good argument as to why that's inappropriate, that's my intention.
> . . . I will review every bit of the evidence that either side wants me to see, but I'm not going to put it up on this big computer monitor and I'm not going to have it displayed in court so that Mr. Camacho can see it again. You have told me that he's familiar with it and I will review it in chambers.

(*Id.* at 16-17.) Camacho's trial counsel "agree[d]" with the court's proposed process and indicated that "Camacho is fine with that." (*Id.* at 20.) The judge then retired to his chambers to view the photographs and videos. (*Id.* at 24.) Later, during the State's

15

argument, the prosecutor described "some of these images, videos, and photographs" as follows:

> Image 9175, which is a video, begins by depicting Bonnie Alan holding a pink vibrator and rubbing her mom's nipples and then touching the vibrator to his penis. The video also depicts the Defendant telling Bonnie Alan to open her mouth, and then Camacho inserts his penis into Bonnie Alan's mouth on two separate occasions. . . .
> Image 9176 is another video. It's approximately 53 seconds. That was a video that was recorded approximately three minutes later on April 13th, 2017. And this video depicts Bonnie Alan lying on her back with her legs and her genitals exposed. The Defendant is seen rubbing his penis on her genital opening and penetrates the genital opening, the outer labia of the genitals. And Bonnie Alan can be heard stating, "Ow, it hurts." And then you hear the Defendant say, quote, "Let me try something," turns off the video camera and approximately one minute later, image 9177, in an approximately 34-second video which shows Bonnie still lying on her back with her legs and genitals exposed, and you can see the defendant's uncircumcised penis that now has a shiny substance on it and he begins rubbing the penis on the genital opening, and he penetrates, again, the genital opening. You can hear Umi Hongo in the background moaning as she is masturbating.
> Image 9185 is a photograph of Bonnie Alan holding an uncircumcised penis. Image 9186 is a photograph of Bonnie Alan with a penis in her mouth.
> Image 9187 is a video, it's only about a three-second video, that was recorded on April 13, 2017, at 5:35 p.m. So approximately five hours after the initial sexual assaults occurred. And this video shows the penis inserted into the mouth.
> . . . And image 9188 that was taken immediately after the three-second video was over is Bonnie Alan's exposed genitals, a penis near her genitals, and then ejaculate on her genital area.

(*Id.* at 33-35.)

### c.  Analysis

It is "necessary that a sentencing judge not be denied an opportunity to obtain pertinent information" in order to fashion an appropriate sentence. *Williams v. New York*, 337 U.S. 241, 247 (1949). In fact, "[i]n discharging his [or her] duty of imposing a proper sentence, the sentencing judge is authorized, if not required, to consider all of the mitigating and aggravating circumstances involved in the crime." *Williams v. Oklahoma*, 358 U.S. 576, 585 (1959); *Nichols v. United States*, 511 U.S. 738, 747 (1994) ("As a general proposition, a sentencing judge 'may appropriately conduct an inquiry broad in scope, largely unlimited either as to the kind of information he may consider, or the source from which it may come.'"); *Williams v. Illinois*, 399 U.S. 235, 243 (1970) ("Sentencing

judges are vested with wide discretion in the exceedingly difficult task of determining the appropriate punishment in the countless variety of situations that appear."); *Wasman v. United States*, 468 U.S. 559, 563 (1984) ("The sentencing court or jury must be permitted to consider any and all information that reasonably might bear on the proper sentence for the particular defendant, given the crime committed."). A judge's ability to review any reliable and relevant evidence is also prescribed by Nevada law. *See Martinez v. State*, 961 P.2d 143, 145 (1998) (explaining that a sentencing judge's "discretion enables [him or her] to consider a wide, largely unlimited variety of information to insure that the punishment fits not only the crime, but also the individual defendant"); *see also* NRS § 176.015(6) (providing that "the court [may] consider any reliable and relevant evidence at the time of sentencing").

Because exhibits 1-7 depicted the actual offenses that Camacho committed, the court was permitted and expected to review them. Contrary to Camacho's contentions, the State's brief, verbal descriptions of the exhibits were insufficient for the court to fully grasp the aggravating circumstances of the offenses. Accordingly, Camacho fails to demonstrate that his counsel was ineffective for not objecting to the admission of these exhibits. Turning to the court's in-chambers review of the exhibits so that Bonnie Alan was not revictimized by a public display of them, Camacho again fails to demonstrate that his trial counsel was ineffective. Camacho's counsel told the court that Camacho did not want to be in the courtroom if the exhibits were going to be publicly presented. (ECF No. 17-24 at 16.) As such, Camacho's counsel's decision not to object to the in-camera review of the exhibits was strategic. *See Correll v. Ryan*, 539 F.3d 938, 948 (9th Cir. 2008) ("[U]nder *Strickland*, we must defer to trial counsel's strategic decisions."). Indeed, instead of Camacho having to leave his own sentencing hearing to avoid viewing the exhibits, the judge left the courtroom and viewed them privately in chambers. This was a reasonable solution and is entitled to deference.

///

///

Because Camacho fails to demonstrate ineffectiveness under *Strickland*, ground 1c is not substantial, so Camacho fails to demonstrate the requisite prejudice necessary to overcome the procedural default. Ground 1c is dismissed.

### B. Ground 2—Cumulative Error

In ground 2, Camacho alleges that the cumulative prejudicial effect of grounds 1a and 1b entitle him to relief. (ECF No. 12 at 25.) In affirming the state court's denial of Camacho's state postconviction petition, the Nevada Supreme Court held: "Assuming that multiple instances of deficient performance can be considered cumulatively for purposes of *Strickland*'s prejudice prong, there is nothing to cumulate in this case." (ECF No. 13-13 at 8 (internal citation omitted).)

Cumulative error applies where, "although no single trial error examined in isolation is sufficiently prejudicial to warrant reversal, the cumulative effect of multiple errors may still prejudice a defendant." *United States v. Frederick*, 78 F.3d 1370, 1381 (9th Cir. 1996); *see also Parle v. Runnels*, 387 F.3d 1030, 1045 (9th Cir. 2004) (explaining that the court must assess whether the aggregated errors "'so infected the trial with unfairness as to make the resulting conviction a denial of due process'" (citing *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)).

Because the Nevada Supreme Court reasonably concluded that there were no errors on the part of Camacho's trial counsel to cumulate, the Nevada Supreme Court's denial of this ground was neither contrary to, nor an unreasonable application of, clearly established federal law and was not based on an unreasonable determination of the facts. Camacho is not entitled to federal habeas relief for ground 2.

### V. EVIDENTIARY HEARING

Camacho request that the Court "[c]onduct an evidentiary hearing at which proof may be offered concerning the allegations in" his First-Amended Petition. (ECF No. 12 at 26.) The Court denies Camacho's request. First, Camacho does not explain what evidence would be presented at an evidentiary hearing. Second, regarding grounds 1a and 1b, this Court has already determined that de novo review is unwarranted, so

supplementing the record for these grounds is prohibited. *See Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (holding that "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits"). Third, regarding ground 1c, because the failure to develop the factual basis of this ground is due to the negligence of Camacho and/or his state postconviction counsel, the requirements of 28 U.S.C. § 2254(e)(2)[6] are triggered, but Camacho fails to demonstrate that he has met those requirements. *See Shinn v. Ramirez*, 596 U.S. 366, 382 (2022) (holding that "a federal habeas court may not conduct an evidentiary hearing or otherwise consider evidence beyond the state-court record based on ineffective assistance of state postconviction counsel" unless the prisoner can satisfy 28 U.S.C. § 2254(e)(2)'s stringent requirements). Finally, the Court has already determined that Camacho is not entitled to relief and further factual development would not affect this Court's reasons for denying relief. *See Schriro v. Landrigan*, 550 U.S. 465, 474 (2007) ("[I]f the record . . . otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing.").

## VI.  CERTIFICATE OF APPEALABILITY

This is a final order adverse to Camacho. Rule 11 of the Rules Governing Section 2254 Cases requires this Court to issue or deny a Certificate of Appealability. The Court

---

[6] 28 U.S.C. § 2254(e)(2) provides as follows:

> If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that--
> (A) the claim relies on--
>   (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
>   (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
> (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

19

has *sua sponte* evaluated the claims within the First-Amended Petition for suitability for the issuance of a Certificate of Appealability. *See* 28 U.S.C. § 2253(c); *Turner v. Calderon*, 281 F.3d 851, 864-65 (9th Cir. 2002). Under 28 U.S.C. § 2253(c)(2), a Certificate of Appealability may issue only when the petitioner "has made a substantial showing of the denial of a constitutional right." With respect to claims rejected on the merits, a petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (citing *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983)). For procedural rulings, a Certificate of Appealability is appropriate only if reasonable jurists could debate: (1) whether the petition states a valid claim of the denial of a constitutional right; and (2) whether the court's procedural ruling was correct. *See id.* Applying these standards, the Court finds that a Certificate of Appealability is unwarranted.

## VII.   CONCLUSION

It is therefore ordered that the First-Amended Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254 (ECF No. 12) is denied.

It is further ordered that a Certificate of Appealability is denied.

It is further ordered that the Clerk of Court: (1) substitute Nethanjah Breitenbach for Respondent Tim Garrett; (2) enter judgment accordingly; and (3) close this case.

DATED THIS 6th Day of January 2025.

MIRANDA M. DU
UNITED STATES DISTRICT JUDGE